UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY BURKE, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : 3:15-cv-01012 (VAB) |
| | : |
| APOGEE CORPORATION, d/b/a IMPACT PLASTICS, INC. and SUPERIOR PLASTICS EXTRUSION COMPANY, INC., | : |
| | : |
| Defendants. | : |

## RULING ON MOTIONS IN LIMINE

Defendants, Apogee Corporation d/b/a Impact Plastics, Inc. ("Apogee") and Superior Plastics Extrusion Company, Inc. ("Superior Plastics"), have filed a motion *in limine* [ECF No. 83] seeking to preclude the introduction of documentary evidence under Rule 408 of the Federal Rules of Civil Procedure. Plaintiff, Jeffrey Burke, has filed two separate motions *in limine* [ECF Nos. 85 and 86] seeking to preclude the introduction of certain financial evidence and requesting that the Court take judicial notice. Mr. Burke opposes Defendants' motion, and Defendants oppose Mr. Burke's motions.

For the reasons outlined below, Defendants' [82] Motion *in Limine* is DENIED without prejudice to renewal; Mr. Burke's [85] and [86] Motions *in Limine* are DENIED AS MOOT.

### I.     Factual and Procedural Background

This case arises out of a contractual dispute between Mr. Burke and his former employers, Apogee and Superior Plastics.[1] Both Apogee and Superior Plastics are owned by the

---

[1] According to the parties' Joint Trial Memorandum, ECF No. 69 at 81 at 4-5, Apogee ceased business operations in 2007, but it continues to exist as a legal entity. Superior Plastics continues to operate. *Id.*

1

same two individuals, David Kingeter and Steven Ryan.  Mr. Burke contends that the two companies were treated as one company in his employment agreement.[2]

Mr. Burke alleges that he purchased a five percent (5%) interest in both Apogee and Superior Plastics as provided for in his employment agreement.  He alleges that he paid for this interest through Defendants' retention of commission payments and distributions over a multi-year period.  Second Am. Compl. ¶¶ 26-36, ECF No. 69.  Defendants admit that the employment agreement gave Mr. Burke the right to purchase five percent (5%) shadow shares in Apogee; however, they deny that Mr. Burke has actually purchased any ownership interest in either Apogee or Superior Plastics.  Answer ¶ 2, ECF No. 78.

On November 20, 2014, Superior Plastics issued a letter terminating Mr. Burke's employment without cause.  Second Am. Compl. ¶ 43.  According to Mr. Burke, his employment agreement requires Apogee and Superior Plastics to repurchase Mr. Burke's five percent (5%) ownership interest in the event that Mr. Burke is terminated involuntarily.  *Id.* at ¶¶ 44-45 (alleging that, "[p]ursuant to Burke's employment contract with Apogee and Superior, upon the involuntary termination of Burke's employment by one or both companies, the companies were required to repurchase Mr. Burke's shadow shares in equity in the companies.").

In order to enforce these alleged contractual rights, Mr. Burke initiated this lawsuit on July 1, 2015, claiming breach of contract, breach of the implied covenant of good faith and fair dealing, and a violation of the Connecticut Shareholders' Act, Conn. Gen. Stat. §§ 33-946(a).  Compl., ECF No. 1.  In addition to a declaratory judgment confirming his alleged five percent (5%) ownership interest, Mr. Burke seeks an order compelling Defendants to "comply with the

---

[2] According to the text of the employment agreement, the agreement was between "Apogee Corporation" and "Superior Plastics Extrusion, Inc." Am. Compl. Ex. A.  Mr. Burke describes this as a "typographical error" intended to read "Superior Plastics Extrusion Company, Inc."  Am. Compl. ¶ 32.

valuation and repurchase procedures set forth in paragraph 3(b)(iv) of Burke's employment contract." Second Am. Compl. at 9.

A bench trial in this matter is currently scheduled to begin on Monday, February 13, 2017. *See* Scheduling Order, ECF No. 73. In advance of trial, both parties have filed motions *in limine* seeking to limit the scope of evidence to be introduced at trial.

## II.     Standard of Review

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008). The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).

Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *Levinson v. Westport Nat'l Bank*, No. 3:09-CV-1955 VLB, 2013 WL 3280013, at *3 (D. Conn. June 27, 2013). Courts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).

## III.    Discussion

Defendants seek to preclude documentation related to settlement negotiations between the parties, arguing that such documentation is properly excluded under Fed. R. Evid. 408. ECF No. 83. Mr. Burke seeks to preclude "undisclosed" financial information pertaining to Defendants' business operations, and he also requests that the Court take judicial notice that

3

documents prepared with Microsoft Office contain "metadata." ECF Nos. 85, 86.  Each motion is discussed in further detail below.

### A.  Motion *in Limine* re: Settlement Communications [ECF No. 82]

Defendants seek to preclude the introduction of documented negotiations over disputed funds in connection with Mr. Burke's employment with Apogee and Superior Plastics. According to Defendants, Mr. Burke began to express concerns in 2006 regarding the amounts allegedly owed to him under his employment agreement.  Defs. Mem. in Supp. at 4-5, ECF No. 83.  Specifically, Mr. Burke challenged the amounts of his commission payments as well as the amounts of periodic distributions of company profits during the course of his employment.  *Id.* Beginning in 2006 and leading up to Mr. Burke's termination in 2014, Mr. Burke engaged in several negotiations with Mr. Kingeter and Mr. Ryan, co-owners of Apogee and Superior Plastics, to attempt to resolve those concerns.  *See* 2008 Letter, Def Ex. E, ECF No. 83-1; Feb. 2011 E-mail, Def. Ex. F, ECF No. 83-1; Apr. 2011 Letter, Def. Ex. G; Jan. 2013 Meeting Tr., Def. Ex. B, ECF No. 88-1.

Defendants specifically challenge the admissibility of two documents from these negotiations: (1) a series of spreadsheets created by Defendants outlining various alternative scenarios for the resolution of Mr. Burke's disagreements (Spreadsheets, Def. Ex. A, ECF No. 83-1); and (2) an audio recording of a meeting in January, 2013 in which Mr. Burke and Defendants discussed those alternatives as well as various other aspects of Mr. Burke's compensation (Jan. 2013 Meeting Tr., Def. Ex. B, ECF No. 88-1).

Defendants argue that both of these documents constitute "settlement negotiations" prohibited by Fed. R. Evid. 408, as they were designed to resolve Mr. Burke's potential legal claims against Defendants.  Defendants claim that the January 2013 meeting and the related

spreadsheets are directly related to the dispute that is currently at issue in this litigation, arguing that the current disagreement over Mr. Burke's five percent (5%) ownership share in the companies is intimately connected to Mr. Burke's earlier complaints about his commission payments and distributions.  According to Mr. Burke, however, his alleged five percent (5%) ownership share was not in dispute at the time of those conversations.  Mr. Burke insists that the conversations were business discussions, not settlement negotiations, and that the subject matter of the conversations was unrelated to the dispute currently before the Court.

Rule 408 prohibits the introduction of "conduct or a statement made during compromise negotiations about the claim" in the context of trial where such evidence is used "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408(a).  When considering whether discussions constitute "settlement negotiations" for purposes of exclusion under Rule 408, "[b]oth the timing of the offer and the existence of a disputed claim are relevant to the determination."  *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2d Cir. 1992).

The timing and character of the contested discussions suggest that they were not "compromise negotiations about the claim" as contemplated by Rule 408.  Fed. R. Evid. 408(a)(2); *see also Alpex Computer Corp. v. Nintendo Co.*, 770 F. Supp. 161, 163 (S.D.N.Y. 1991), *on reconsideration*, No. 86 CIV. 1749 (KMW), 1994 WL 139423 (S.D.N.Y. Mar. 18, 1994), *vacated in part*, No. 86 CIV. 1749 (KMW), 1994 WL 381659 (S.D.N.Y. July 21, 1994) ("All that is needed for Rule 408 to apply is an actual dispute, or at least an apparent difference of opinion between the parties as to the validity of a claim.").  This litigation is fundamentally a dispute about Mr. Burke's claimed five percent (5%) interest in Apogee and Superior Plastics and Defendants' alleged contractual obligation to repurchase that ownership interest in the wake

of Mr. Burke's involuntary termination in November 2014.  Am. Compl. ¶¶ 38-51.  The termination of Mr. Burke's employment, then, was the central event giving rise to Mr. Burke's claims.

The January 2013 conversation, however, predates Mr. Burke's termination by well over one year and predates the initiation of this lawsuit by well over two years.  During the January 2013 conversation, the parties focused exclusively on the amount of compensation owed to Mr. Burke during the course his employment with Apogee and Superior Plastics, not on any post-employment stock repurchase obligations.  Defs. Ex. D, ECF No. 83-1. Furthermore, the bulk of the conversation focused specifically on the proper amount of Mr. Burke's commission payments, a debate that has since been fully resolved by mediation and is not at issue in this case. Defs. Ex. B; Burke Tr. at 182-183.

Defendants nonetheless argue that the January 2013 conversation and related spreadsheets are connected to the claims now at issue in this lawsuit.  In support of their argument, they cite to a portion of Mr. Burke's deposition transcript in which Defendants, referring to the January 2013 meeting, stated: "that meeting was in furtherance of efforts to try to settle and resolve… your request for profit distributions, et cetera" and Mr. Burke responded: "Yes."  Burke Dep. at 204, ECF No. 83-1.  While the topic of "profit distributions" allegedly owed to Mr. Burke during his employment is certainly conceptually related to the claims at issue in this lawsuit, the amount of any such distribution payments is a separate question than the question at issue in this lawsuit, which focuses instead on whether Defendants had a contractual obligation to purchase shadow stock from Mr. Burke after his termination.  *See* Second Am.

6

Compl. ¶¶ 45-46.[3]  Thus, a negotiation about profit distributions is still not a conversation "about the claim" as required under Rule 408.  Accordingly, exclusion of the meeting transcript and spreadsheets is not proper on this ground.[4]

Defendants' motion *in limine* is denied.  To the extent that Defendants object to the relevance of all of the offered evidence, however, they may raise such objections in the context of trial.

### B. Motion *in Limine* re: Defendants' Undisclosed Financial Dealings or Condition [ECF No. 85]

Mr. Burke seeks the exclusion of "any evidence or testimony concerning the financial dealings or condition of the defendant-companies to the extent that information was requested by the plaintiff during discovery and not produced by defendants." Pl. Mot., ECF No. 85. Defendants state that they have already produced all evidence of financial dealings or condition that they intend to use at trial, thus there is no "undisclosed" evidence of financial dealings that Defendants intend to present.  Defs. Opp. at 4-5, ECF No. 91.  Defendants further state that, to

---

[3] The Second Amended Complaint frames Mr. Burke's breach of contract claim as a violation of the section paragraph 3(b)(iv) of his employment contract, a section labeled "Involuntary Termination."  Second Am. Compl. ¶ 46 ("Mr. Burke seeks an order from the Court declaring that he is a 5% owner of Apogee and Superior and compelling Apogee and Superior to comply with the valuation and repurchase procedures set forth in paragraph 3(b)(iv) of his contract.").

[4] The Court notes that neither party to the January 2013 conversation was represented by counsel, which, together with the timing of the conversation, suggests that the January 2013 conversation may not have constituted "settlement negotiations" at all.  *See Pierce*, 955 F.2d at 827 ("where a party is represented by counsel, threatens litigation and has initiated the first administrative steps in that litigation, any offer made between attorneys will be presumed to be an offer within the scope of Rule 408."); *see also Int'l Bus. Machines Corp. v. BGC Partners, Inc.*, No. 10 CIV. 128 PAC, 2013 WL 1775437, at *9 (S.D.N.Y. Apr. 25, 2013) ("It is often difficult to determine whether an offer is made in compromising or attempting to compromise a claim, though relevant factors exist, including (1) whether a party is represented by counsel, (2) threatens litigation, (3) has initiated the first administrative steps in that litigation, (4) the timing of the offer; and (5) the existence of a disputed claim." (internal citations and marks omitted)).

the extent that Mr. Burke's motion seeks the exclusion of Defendants' "financial dealings or condition" more broadly, they oppose the motion as unduly broad.[5]

The language of Mr. Burke's motion requests only the exclusion of financial documentation not previously disclosed in discovery.  As Defendants do not intend to present any evidence that has not previously been disclosed in discovery – a point confirmed in oral argument on this motion – Mr. Burke's [85] Motion *in Limine* is moot.

### C. Motion *in Limine* re: Metadata [ECF No. 86]

Finally, Mr. Burke requests that the Court take judicial notice of "the fact that documents created pursuant to the computer programs Microsoft Word and Microsoft Excel contain metadata—that is, properties that are associated with those documents." Pl. Mem. in Supp. at 1, ECF No. 86-1.  In Defendants' opposition brief, they state that they "generally do not dispute what they understand is the basic thrust of Plaintiff's Motion"; namely, that documents created with Microsoft Office do contain metadata.  Defs. Opp. at 1, ECF No. 92.  To the extent that Mr. Burke's motion seeks judicial notice of "the accuracy of the metadata… or that such metadata conclusively establishes the truth of the information contained therein," Defendants oppose the motion.  *Id.* at 2.

Under Rule 201, the Court may take judicial notice of any "adjudicative fact" that "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Rule 201 also provides that the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

---

[5] Defendants note that Mr. Burke had the opportunity to conduct depositions regarding the disclosed financial information, but declined to do so.  Defendants also note that, if they had provided Mr. Burke with more financial information than what was provided during discovery, they would essentially be granting him the relief requested in Count Three of his Second Amended Complaint.

Both Defendants and Mr. Burke agree that documents created with Microsoft Word and Microsoft Excel do contain metadata, and Mr. Burke has cited to a Microsoft Office user manual and some case law recognizing this fact.  At oral argument on this motion, Defendants expressed concerns about the accuracy of metadata, and the ability to trace specific metadata to a particular document.  While the Court appreciates Defendants' concerns, based on the language of Mr. Burke's motion, the motion only requests that the Court take judicial notice of the existence of metadata, a fact that Defendants do not dispute.  Accordingly, Mr. Burke's [86] Motion *in Limine* is moot.  To the extent that Defendants wish to contest the accuracy of metadata or challenge Mr. Burke's attempts to link metadata to a particular document, they may do so in the context of trial.

SO ORDERED this 10th day of February, 2017 in Bridgeport, Connecticut.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE